UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARL HARRIS, JR.,

      Plaintiff,

vs.                                         Case No. 3:07-cv-18-J-32MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

      Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, it is recommended the Commissioner's decision be **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 24, 2003, alleging an inability to work since December 1, 2001. (Tr. 59-62, 363-65). The Social Security Administration ("SSA") denied the applications initially and upon reconsideration. (Tr. 25, 30-31, 35). Plaintiff then requested and received an initial hearing before an Administrative Law Judge ("ALJ") on October 4, 2005. (Tr. 41, 48,

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a District Judge and from attacking factual findings on appeal.

1

426-71). On May 23, 2006, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 14-23). On June 8, 2006, Plaintiff filed a Request for Review by the Appeals Council (Tr. 10) and on November 3, 2006, the Appeals Council denied Plaintiff's Request for Review, thereby making the ALJ's May 23, 2006 decision the final decision of the Commissioner. (Tr. 5-7). Plaintiff timely filed his Complaint in the U.S. District Court on January 8, 2007. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since December 1, 2001 (Tr. 59, 363) due to physical and mental problems, left knee and right ankle problems, lower back pain and arthritis. (Tr. 65).

### B.    Summary of Evidence Before the ALJ

Plaintiff was forty-four (44) years of age on the date of the hearing. (Tr. 431). He has an eleventh grade education (Tr. 71, 434) and past relevant work experience as a construction laborer, carpenter and drywall hanger. (Tr. 66, 436, 439).

Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will not be repeated in full here. However, by way of summary[2], the record indicates that Plaintiff appeared for a consultative examination with Linda Abeles, Ph.D. on February 11, 2004. (Tr. 301-03). Dr. Abeles noted that Plaintiff "presented as a poor informant." (Tr. 301). She also observed Plaintiff to be appropriately oriented and functioning in the borderline range of intelligence. (Tr. 302). Dr. Abeles assigned Plaintiff a Global

---

[2] Because Plaintiff's appeal only addresses his mental impairments, the Court will focus its summary on the medical records dealing with Plaintiff's mental impairments.

Assessment of Functioning ("GAF") score of 60[3] and determined that Plaintiff's "current level of psychological functioning would preclude him from obtaining or maintaining employment" and that he was not "competent to manage any monies to which he may be entitled." (Tr. 303). She further opined that Plaintiff's "[p]rognosis for future success in the work place appears to be poor." Id.

On March 1, 2004, Mark A. Williams, Ph.D., completed a Psychiatric Review Technique form (a "PRTF") and a Mental Residual Functional Capacity ("RFC") assessment on Plaintiff. (Tr. 304-17, 318-21). The PRTF revealed mild restrictions in activities of daily living; moderate restrictions in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration. (Tr. 314). Dr. Williams noted Dr. Abeles's opinion that Plaintiff could not work and stated that he did "not find in the report a substantial case for this opinion." (Tr. 316). Additionally, Dr. Williams believed Dr. Abeles's findings of cognitive problems were "not really supported either." Id. Dr. Williams found Plaintiff appeared to have an "intact capacity for independent functioning" and noted that Plaintiff "stopped working due to physical problems and loss of driver's license." Id.

Dr. Williams's mental RFC assessment demonstrated Plaintiff was moderately limited in the ability to: understand, remember and carry out detailed instructions (Tr. 318); interact appropriately with the general public; accept instructions and respond

---

[3] The GAF score is meant to be a procedure for measuring overall severity of psychiatric disturbance. A rating of 60 indicates some moderate symptoms (e.g., a flat affect and circumstantial speech, occasional panic attacks) OR some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994).

appropriately to criticism from supervisors; and set realistic goals or make plans independently of others (Tr. 319). Dr. Williams noted Plaintiff was able to: "reliably understand and recall simple but not detailed instructions," "carry out simple tasks adequate to complete 8-hour work days," work with the public and co-workers "in [a] casual setting" and "accept non-threatening supervision." (Tr. 320). Finally, Dr. Williams opined Plaintiff's "work demands should be mostly routine." Id.

The record also contains documents from Meridian Behavioral Healthcare, Inc. ("Meridian"). (Tr. 322-334). It appears Plaintiff presented at Meridian on at least two occasions: February 11, 2004 and April 2, 2004. The documents dated February 11, 2004 consist of a personal history of Plaintiff, including his educational, employment, legal, family psychiatric and substance abuse histories. (Tr. 322-23). The records from April 2, 2004 include a psychiatric evaluation, which is almost entirely illegible. (Tr. 328-29). It is not possible to determine who completed the evaluation and whether that individual was a doctor, a nurse, or a social worker. Whoever completed the evaluation opined Plaintiff had a GAF score of 45[4] and was not able to work. (Tr. 329). The records also include an undated and unsigned intake and screening evaluation which notes Plaintiff's thought processes were organized and coherent; that he suffered from hallucinations when he used drugs in the past; and that his cognitive functions were intact except for his concentration and problem solving abilities. (Tr. 331). Plaintiff's affect was normal and his mood was angry, anxious, overwhelmed, depressed and

---

[4] A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994).

4

irritable. (Tr. 331-32). Plaintiff had fair insight and had exhibited poor judgment. (Tr. 333).

During the hearing before the ALJ, Plaintiff testified he was being treated for bipolar disorder. (Tr. 463). Plaintiff stated he experienced mood swings daily and that approximately 65% of the time he felt depressed. Id. Plaintiff stated that when he is depressed, Plaintiff is "snappy" and has a very short temper. (Tr. 463-64). Plaintiff also testified his attention span and comprehension have decreased. (Tr. 465). Plaintiff explained that he is able to help his two children get ready for school in the morning, he can cook occasionally, load the dishwasher, dress and bathe himself, vacuum and make his bed. (Tr. 454, 456-57). Plaintiff also testified that he enjoys fishing and is able to "do a little fishing." (Tr. 458). At the conclusion of the hearing, the ALJ stated he would keep the record open to obtain more recent medical records from Shands. (Tr. 467).

The recent records from Shands indicate Plaintiff was seen for a variety of ailments, including his depression. On May 23, 2005, Plaintiff reported he had a history of schizophrenia and depression but that he was not currently taking Paxil for the depression. (Tr. 424). On August 25, 2005, Plaintiff stated he was feeling down about his physical condition but was not depressed (as he had been depressed in the past). (Tr. 406). Plaintiff did not want to see a psychiatrist and was initially reticent about starting to take an antidepressant. Id. However, later during the appointment, Plaintiff decided to start taking an antidepressant. Id.

### C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in a

substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve (12) months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520(a), 416.920(a).  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or a combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(4)(ii).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits through December 31, 2004.  (Tr. 16).  At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since his alleged onset date."  Id.  At step two, the ALJ found Plaintiff had

"the following severe impairments: right and left knee sprains, a history of gout, status post colon surgery, left shoulder status post scapular fracture and acromioclavicular joint separation, a personality disorder, depression and alcohol dependence." Id.  At step three, the ALJ stated "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17).

With respect to Plaintiff's RFC, the ALJ found Plaintiff could:

> lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for 6 hour[s] per 8-hour workday, and push and pull with no restrictions.  The claimant also experiences occasional limitations of his ability to maintain attention and concentration due to psychologically based symptoms but is able to understand, remember and carry out simple instructions.

(Tr. 19).  The ALJ believed Plaintiff's testimony regarding the "intensity, duration and limiting effects" of his impairments was "not entirely credible."  (Tr. 20).

At step four, the ALJ determined Plaintiff could not perform any of his past relevant work.  (Tr. 21).  Accordingly, the ALJ proceeded to step five where he utilized the Medical-Vocational Guidelines (the "grids") and determined that based on Plaintiff's "age, education, work experience, and residual functional capacity, there [were] jobs that exist in significant numbers in the national economy" that Plaintiff could perform and therefore, "a finding of 'not disabled' [was] supported by application of Medical-Vocational Rule 202.18."  (Tr. 21-22).   Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 22).

## III.  ANALYSIS

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining the court must scrutinize the entire record to determine the reasonableness of the factual findings).

**B.      Issues on Appeal**

Plaintiff only argues one issue on appeal: whether the ALJ erred at Step 5 in his analysis. (Doc. 16). Specifically, Plaintiff claims that his depression and personality disorder are non-exertional impairments that significantly limited his ability to perform basic work activities and therefore, the ALJ erred in utilizing the grids to determine that Plaintiff could perform work available in the national economy. (Doc. 16, p.9).

As stated above, once the ALJ assesses a claimant's RFC, the ALJ proceeds to determine what, if any work the claimant is capable of performing. If the claimant is unable to perform any of his past relevant work, the burden shifts to the Secretary to show that there is other work in the national economy that the claimant can perform. Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985). While conducting this analysis, the ALJ may, in appropriate circumstances, use the grids in lieu of vocational testimony. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992)). Exclusive reliance on the grids is improper, however, when the claimant cannot perform a full range of work at a given exertional level or "when claimant has a non-exertional impairment that significantly limits basic work skills." Foote, 67 F.3d at 1558 (internal quotation marks omitted). A significant non-exertional impairment is one that precludes the performance of "'the full range of activities listed in the [grids] under the demands of day-to-day life. Under this standard isolated occurrences will not preclude the use of the [grids] . . . '" Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997) (quoting, Thompson v. Bowen, 850 F.2d 346, 350 (8th Cir. 1988)).

In this case, Plaintiff has chosen to focus his appeal on his non-exertional

impairments and argues that his depression and personality disorder are non-exertional impairments that significantly limited his ability to perform basic work activities. In determining Plaintiff's RFC, the ALJ found Plaintiff able to:

> lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for 6 hour[s] per 8-hour workday, and push and pull with no restrictions. The claimant also experiences occasional limitations of his ability to maintain attention and concentration due to psychologically based symptoms but is able to understand, remember and carry out simple instructions.

(Tr. 19). The ALJ went on to note that Plaintiff had "a limited ability to understand, remember and carry out detailed instructions but no loss of ability to meet the basic work-related activity of understanding, remembering and carrying out simple instructions." (Tr. 22). Accordingly, the ALJ determined Plaintiff suffered from no "substantial loss of ability to perform any of the basic mental work-related activities." Id.

As noted above, if the ALJ finds any non-exertional limitations, the ALJ is required to make a "'specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.'" Foote, 67 F.3d at 1559 (quoting Johnson v. Shalala, 1993 U.S.Dist. LEXIS 8553 (S.D. Ala. 1993) (in turn quoting Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988)). Examples of non-exertional mental impairments include: "difficulty maintaining attention or concentrating," and "difficulty understanding or remembering detailed instructions." 20 C.F.R. § 404.1569a(c)(ii) & (iii). In the instant case, the ALJ found Plaintiff was "moderately limited in his ability to adequately maintain his concentration, attention and pace." (Tr. 18). Therefore, the ALJ found Plaintiff suffered from non-exertional limitations and needed to determine if those limitations

were severe enough to preclude a wide range of employment at the light level.  The ALJ recited the mental activities generally required for unskilled work:

> understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

(Tr. 22).  The ALJ then noted Plaintiff's limitations in understanding, remembering and carrying out detailed instructions but specifically held that Plaintiff had no "loss of ability to meet the basic work-related activity of understanding, remembering and carrying out simple instructions."  Id.  Accordingly, the ALJ found Plaintiff suffered from no "substantial loss of ability to perform any of the basic mental work-related activities."  Id.

Plaintiff takes issue with this finding and attempts to show it is not supported by substantial evidence by pointing to three pieces of evidence.  Initially, Plaintiff points to the PTRF completed by Dr. Williams which rated Plaintiff mildly limited in his activities of daily living, moderately limited in maintaining social functioning and moderately limited in maintaining concentration, persistence or pace.  (Tr. 314).  Dr. Williams also completed a Mental RFC form finding Plaintiff moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others.  (Tr. 318-19).  The ALJ clearly considered Dr. Williams's findings and discussed them in his opinion.  (Tr. 18).  Indeed, the RFC assigned to Plaintiff is consistent with Dr. Williams's opinion in that the ALJ found Plaintiff to be moderately limited in social functioning and his ability to adequately maintain concentration and pace.  Id.  Dr.

11

Williams found Plaintiff suffered no more than moderate limitations in any of the mental activities he rated. Although Plaintiff argues that Dr. Williams found Plaintiff moderately limited in his ability to carry out very short and simple instructions (Doc. 16, p.7), this is not the case. Instead, Dr. Williams found Plaintiff not significantly limited in the ability to carry out short and simple instructions. (Tr. 318). Dr. Williams's findings do not show Plaintiff's impairments significantly interfered with his ability to perform unskilled light jobs. Accordingly, the Court finds no error in the manner in which the ALJ examined and weighed Dr. Williams's opinion.

Next, Plaintiff notes the consultative examination conducted by Linda Abeles, Ph.D. on February 11, 2004 in which Dr. Abeles rated Plaintiff with a GAF score of 60 (Tr. 302) and stated that Plaintiff's

> current level of psychological functioning would preclude him from obtaining or maintaining employment. He would not appear competent to manage any monies to which he may be entitled.

(Tr. 303). Again, the ALJ considered and discussed Dr. Abeles's opinion. (Tr. 18). This time, however, the ALJ stated that he gave "little weight" to Dr. Abeles's opinion that Plaintiff could not work due to Dr. Abeles's "failure to discuss what functional limitations would preclude the claimant from working and how that opinion is consistent with her assigning the claimant a GAF of 60." (Tr. 18).

Dr. Abeles was an examining consulting physician who saw Plaintiff only once and therefore, her "opinion was not entitled to any special weight . . ." Wainwright v. Commissioner of Social Security Admin., 2007 WL 708971 (11th Cir. 2007). However, the ALJ was required to consider her opinion and state the weight he gave to it and the

reasons why. McCloud v. Barnhart, 166 Fed.Appx. 410, 418 (11th Cir. 2006) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). In this case, it is clear the ALJ did so. He only gave "little weight" to Dr. Abeles's opinion that Plaintiff could not work and specifically stated that his reasons for doing so were because Dr. Abeles did not discuss what functional limitations would preclude Plaintiff from working. (Tr. 18). Additionally, the ALJ noted that Dr. Abeles's opinion that Plaintiff could not work was inconsistent with her assignment of a GAF score of 60. The Court believes the ALJ committed no error in evaluating Dr. Abeles's opinion.

Finally, Plaintiff points to the psychiatric evaluation conducted by Meridian Behavioral Healthcare on April 2, 2004 in which it was stated Plaintiff was unable to work. (Tr. 329). It is impossible to determine who completed this record as the signature is not legible, nor is the signature followed by any indication as to whether the evaluator is a doctor, social worker or nurse practitioner. The Court is confident the evaluator is not a treating physician as there does not appear to be any other records bearing the same signature. The ALJ mentioned Plaintiff's treatment at Meridian but only to note that Plaintiff's mental health treatment history was "sparse" with "only two mental health visits, one for an intake evaluation on April 2, 2004, and another for medication prescription on April 30, 2004." (Tr. 18).

Although an ALJ must consider "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand," he "is not required to discuss every piece of evidence submitted." Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Additionally, the ALJ's failure to cite specific evidence does not necessarily indicate that it was not considered."

13

Wheeler v. Apfel, 224 F.3d 891, 896 (8th Cir. 2000) ("[t]hat the ALJ did not attempt to describe the entirety of Wheeler's medical history does not support Wheeler's argument that the ALJ disregarded certain aspects of the record"). In this case, while the ALJ did not specifically address the notation in the Meridian records regarding Plaintiff being unable to work, the Court finds no error. As noted above, it is impossible to determine who rendered that opinion. Furthermore, there is no evidence in the other Meridian records to support such a finding. "[I]n the absence of any information about the basis for [this] opinion, the administrative law judge committed no error in failing to discuss it." Maurice v. Barnhart, 2002 WL 449288 (D. Me. 2002). Indeed, with such a dire prognosis, one would expect follow-up records for Plaintiff, however, no such records exist. Additionally, the more recent records from Shands indicate Plaintiff's depression had improved and Plaintiff was not interested in seeing a psychiatrist. (Tr. 405-06). Accordingly, the Court finds no error in the ALJ's treatment of the Meridian records and finds that substantial evidence exists to support the ALJ's finding that Plaintiff suffered from no "substantial loss of ability to perform any of the basic mental work-related activities." (Tr. 22). As such, it was proper for the ALJ to utilize the Grids in determining whether Plaintiff could perform work available in the national economy.

**IV.    CONCLUSION**

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.

**DONE AND ENTERED** at Jacksonville, Florida, this  12th  day of February, 2008.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Timothy J. Corrigan,
   United States District Judge